## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| **MARGARET BOBB** | |
| 3415 Gwynn Falls Pkwy, Apt. B4 | * |
| Baltimore, MD  21216 | |
| | * |
| Plaintiff, on behalf of herself and others | |
| similarly situated, | * |
| | |
| v. | * |
| | |
| **FINEPOINTS PRIVATE DUTY** | * |
| **HEALTHCARE, LLC** | |
| 506 Foster Knoll Drive | * |
| Joppa, Maryland 21085 | |
| | * |
| **Serve on:** | |
| Cynthia Keller-Bee | * |
| 506 Foster Knoll Drive | |
| Joppa, Maryland 21085 | * |
| | |
| and | * |
| | |
| **CYNTHIA KELLER-BEE** | * |
| 506 Foster Knoll Drive | |
| Joppa, Maryland 21085 | * |
| | |
| Defendants. | * |

## COLLECTIVE AND CLASS ACTION COMPLAINT

MARAGARET BOBB, by and through her undersigned Counsel AARP Foundation Litigation and the Public Justice Center, hereby submits her Complaint against FINEPOINTS PRIVATE DUTY HEALTHCARE, LLC and CYNTHIA KELLER-BEE and alleges as follows:

## INTRODUCTION AND BACKGROUND

1.     Plaintiff Margaret Bobb ("Plaintiff") is a former employee of FinePoints Private Duty Healthcare, LLC and its owner Cynthia Keller-Bee (collectively, "Defendants"). Plaintiff and other similarly situated employees all work or worked as home care aides (also known as personal

care aides) for Defendants. Defendants employed dozens of home care aides at a time. Plaintiff brings this civil action for relief stemming from Defendants' willful refusal to pay her and similarly situated employees' wages, including overtime and travel-time wages, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401, *et seq.*; and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501, *et seq.* Plaintiff seeks her unpaid wages, damages, interest, attorneys' fees and costs pursuant to the FLSA, MWHL and the MWPCL.

2.    Defendants willfully misclassified Plaintiff and other home care aides as independent contractors, despite the fact that none of the legal factors within the applicable six-part test support this classification. Through this unlawful practice, Defendants evaded the payment of wages owed to Plaintiff and others similarly situated under the FLSA, MWHL and the MWPCL.

3.    Plaintiff brings this action as a collective action under the FLSA, 29 U.S.C. §§ 207 and 216(b) on behalf of herself and similarly situated current and former employees of Defendants who were subject to Defendants' schemes to violate the FLSA. Plaintiff also brings this action as a class action under MWHL and the MWPCL on behalf of herself and two classes of similarly situated current and former employees of Defendants who were (i) denied the legally required overtime rate for hours worked beyond forty (40) in a given week, including, but not limited to, overtime hours arising from unpaid time spent traveling between clients' homes; and (ii) denied compensation for compensable time spent traveling between clients' homes, but who did not work over forty (40) hours in a given week.

## THE PARTIES

4.     Plaintiff Margaret Bobb is an adult resident of Baltimore City, Maryland. From approximately January 2021 to March 2023, Defendants employed her to provide in-home care to Defendants' clients.

5.     Defendant FinePoints Private Duty Healthcare, LLC (hereinafter, "FinePoints") is an incorporated for-profit business dedicated to the provision of domestic service, as the term is defined by the FLSA. FinePoints is licensed as a residential service agency by the Maryland Department of Health. FinePoints' principal office is in Harford County, Maryland.

6.     FinePoints provides home care services to individuals in various locations throughout Maryland, including Harford County, Baltimore County, Cecil County and Baltimore City. These individuals are FinePoints' clients.

7.     Due to the nature of its business, FinePoints is subject to the FLSA, MWHL and the MWPCL.

8.     FinePoints' annual dollar volume of business exceeds five hundred thousand dollars ($500,000.00).

9.     FinePoints was Plaintiff's and other similarly situated workers' employer within the meaning of the FLSA, 29 U.S.C. § 203(g), MWHL, Md. Code Ann., Lab. & Empl. § 3-401(b) and the MWPCL, *id*. § 3-501(b).

10.     At all times relevant, Defendant Cynthia Keller-Bee (hereinafter, "Keller-Bee") has owned and operated FinePoints and controlled its daily operations, including setting policies concerning workers' pay rates and methods, controlling employees' work schedules, maintaining employees' work records and both maintaining and exercising her power to hire and fire employees.

11.     Keller-Bee was Plaintiff's and other similarly situated workers' employer within the meaning of the FLSA, 29 U.S.C. § 203(g), MWHL, Md. Code Ann., Lab. & Empl. § 3-401(b) and the MWPCL, *id*. § 3-501(b).

12.     At all times relevant, Defendants controlled the administration of their business.

13.     Defendants and their agents were, individually and together, actively engaged in the management and direction of Plaintiff and other similarly situated employees.

14.     Defendants had the power to hire and fire Plaintiff and other similarly situated employees.

15.     Plaintiff and others similarly situated recognized Defendants' authority and obeyed Defendants' instructions.

## JURISDICTION AND VENUE

16.     Original jurisdiction in this Court is provided by the FLSA, 29 U.S.C. § 207, *et seq*. This Court also has subject matter jurisdiction under 28 U.S.C. § 1331, as this matter presents a federal question.

17.     Discretionary supplemental jurisdiction of Plaintiff's Maryland state law claims is provided by 28 U.S.C. § 1367(a); the state law claims form part of the same case or controversy and derive from a common nucleus of operative facts, on which Plaintiff's federal claims are based.

18.     No reasons exist that would force this Court to decline jurisdiction under 28 U.S.C. § 1367(c) because (i) the state-law claims do not raise novel or complex issues of state law, (ii) the state-law claims do not substantially predominate the claims over which this Court has original jurisdiction and (iii) no exceptional circumstances exist that would constitute a compelling reason for declining jurisdiction.

19.     Pursuant to 28 U.S.C. § 1391(b), venue is appropriate because the unlawful acts central to this matter occurred within the state of Maryland.

20.     This Court has personal jurisdiction over Defendants; FinePoints is incorporated under the laws of Maryland and conducts sufficient business within the forum state to constitute a submission to its laws.

## FACTUAL ALLEGATIONS FOR ALL CLAIMS

21.     Defendants' principal business and source of revenue is providing home care services to persons with special needs.

22.     Defendants' clients are typically seniors and other individuals with physical and cognitive disabilities, mental illnesses and other conditions that make it challenging for them to fully care for themselves on their own.

23.     Defendants' business purpose is to provide clients with the services needed to function in their homes. Defendants' services center on assisting clients with their day-to-day activities and ensuring clients are compliant with their care plans.

24.     Defendants hired Plaintiff and other similarly situated employees to provide care to Defendants' clients. Plaintiff and others similarly situated all work or worked as home care aides.

25.     Defendants devised detailed individual-client treatment plans controlling the manner that Plaintiff and other home care aides were to perform tasks associated with personal care.

26.     Defendants' treatment plans directed Plaintiff and other home care aides to monitor Defendants' clients' mental and physical condition, monitor their food and fluid intake and assist clients with meal preparation.

27.     Defendants required Plaintiff and other home care aides to assist clients with personal care, including bathing, dressing, grooming and performing similar hygiene-related tasks.

28.     Defendants required Plaintiff and other home care aides to assist clients with basic housekeeping and general cleaning, including washing dishes, sweeping floors, doing laundry and changing linens.

29.     Defendants' treatment plans directed Plaintiff and other home care aides to run errands with Defendants' clients. This primarily consisted of shopping for food and other household items.

30.     Defendants required Plaintiff and similarly situated home care aides to transport and accompany Defendants' clients to medical appointments.

31.     Plaintiff and other home care aides were also tasked with engaging clients in stimulating activities through conversations and social activities; Defendants directed Plaintiff to develop continuing relationships with the clients they were assigned.

32.     To perform their daily tasks, Plaintiff and other home care aides were not required to have advanced knowledge or business-like initiative.

33.     Plaintiff and others similarly situated did not provide medical advice or diagnoses.

34.     Plaintiff and other similarly situated employees adequately performed their tasks to benefit Defendants, as well as Defendants' clients.

35.     Defendants controlled all aspects of Plaintiff's and other home care aides' employment. Upon being hired, Defendants required Plaintiff and others similarly situated to execute an "Employee Policies and Procedures" Agreement confirming they would comply with Defendants' personnel policies and procedures. Those policies included Defendants closely monitoring Plaintiff and other home care aides at all times while on the job.

36.     For instance, in accordance with the Employee Policies and Procedures Agreement, Defendants required Plaintiff and other home care aides to track the time they spent in a client's home each shift. This entailed having to utilize various tracking devices to show they were actually at a client's residence at the times Defendants scheduled them to be there. Defendants went as far as requiring Plaintiff and other home care aides to take and upload pictures of themselves at clients' homes to confirm their arrival at each client's home.

37.     As a condition of their employment and to exert further control, Defendants also required Plaintiff and other home care aides to execute a "Field Employee Standards and Procedures" Agreement.

38.     The Field Employee Standards and Procedures Agreement forced Plaintiff and other home care aides to wear a FinePoints identification badge while in the homes of Defendants' clients.

39.     The Field Employee Standards and Procedures Agreement also instructed Plaintiff and other home care aides to notify FinePoints if they were five (5) minutes late or more to a shift, but specifically prohibited them from calling Defendants' clients directly. The Agreement made clear that failing to notify FinePoints of an absence was grounds for termination.

40.     The Field Employee Standards and Procedures Agreement provided that if a client were to ask a home care aide to stay longer or leave early, the home care aide must first seek approval from Defendants. The Agreement also made clear that as an "employee" of Defendants, Plaintiff and other home care aides were not authorized to accept any additional employment directly offered by Defendants' clients.

41.     In accordance with the Field Employee Standards and Procedures Agreement, Plaintiff and other home care aides were responsible for tracking all tasks they performed while in

Defendants' clients' homes. Defendants required Plaintiff and others similarly situated to submit daily progress reports indicating the specific services they provided. Defendants required these reports to be completed via Defendants' software. Home care aides were also required to submit these reports pursuant to the strict deadlines that Defendants enforced.

42.     Defendants strictly enforced the attire that Plaintiff and other home care aides were permitted to wear when attending mandatory staff meetings and in Defendants' clients' homes. This included having to wear Defendants' uniform, in which Defendants' logo was inscribed. Plaintiff and other home care aides were subject to reprimands if they failed to comply with Defendants' dress code.

43.     As a condition of their employment, Defendants required Plaintiff and other home care aides to execute a "Confidentiality and Non-Competition" Agreement. This Agreement purported to bar Plaintiff and others similarly situated from entering into "competitive employment" within twenty-five (25) miles of any FinePoints office both during workers' employment and for a period of twelve (12) months thereafter.

44.     While employed with Defendants, Plaintiff and other home care aides were strictly prohibited from soliciting referrals for any related employment opportunities from any referral source other than Defendants. The Confidentiality and Non-Competition Agreement made clear that violation of this condition would result in termination of the employment relationship and other repercussions. Consequently, Plaintiff and other home care aides depended entirely on Defendants for their income for the duration of their employment.

45.     For the entirety of their employment, Defendants also prevented Plaintiff and other home care aides from having the capacity to increase their income through investing in equipment, hiring assistants, or other means.

46.     For the entirety of Plaintiff and other home care aides' employment, Defendants controlled the manner in which they were paid.

47.     Defendants paid Plaintiff and other home care aides by the hour for the time they spent working in Defendants' clients' homes.

48.     Until approximately mid-October 2022, Defendants promised to pay Plaintiff and other home care aides twenty-five dollars ($25.00) per hour and that pay rate was reflected on Plaintiff and other home care aides' pay-stubs. However, Defendants unlawfully withheld twenty (20) percent of the recorded hourly wages of Plaintiff and other home care aides.

49.     From approximately January 2021 until October 2022, although her pay-stubs showed a pay rate of twenty-five dollars ($25.00) per hour, Plaintiff received bi-weekly payments reflecting a pay rate of only twenty dollars ($20.00) per hour.

50.     In approximately October 2022, Defendants decreased Plaintiff's rate of pay to seventeen dollars ($17.00) an hour, which was her rate of pay until her employment ended.

51.     Defendants controlled the clients that Plaintiff and other home care aides were assigned.

52.     Defendants controlled Plaintiff and other home care aides' work schedules. Once home care aides were assigned a client, Defendants were responsible for making the schedule particular to that client. Defendants required that Plaintiff and other home care aides follow the schedules dictated by Defendants.

53.     Defendants often scheduled Plaintiff and other home care aides to provide care to multiple clients. It was routine for Defendants to schedule Plaintiff and other home care aides to work back-to-back shifts at the homes of various clients during a single workday. This required

Plaintiff and others similarly situated to travel directly from one client's home to the next throughout their day.

54.     Because Defendants' clients resided at various locations throughout Maryland, Plaintiff and other home care aides often spent a significant amount of time each day traveling from one client's home to the next.

55.     Plaintiff often spent seven (7) to ten (10) hours a week traveling between Defendants' clients' homes.

56.     Defendants failed to pay Plaintiff and other home care aides for the time they spent traveling between Defendants' clients' homes, despite the fact that travel-time is compensable.

57.     Defendants compensated Plaintiff and other home care aides only for the periods Defendants scheduled them to work.

58.     Defendants required Plaintiff and other home care aides to record their work hours to reflect only the times they were scheduled to work, not the amount of time they actually worked.

59.     There was a high turnover rate amongst Defendants' home care aides. Due to the long hours and low pay, it was common for Defendants' home care aides to terminate their employment after short periods.

60.     Due to the multiple shifts that Plaintiff was assigned, she consistently worked well over forty (40) hours a week. It was her typical practice to work seven (7) days a week. During many pay-periods, Plaintiff regularly worked as many as forty-five (45) to fifty-five (55) hours per week. There were periods when she worked even more.

61.     As one example, Plaintiff's pay-stub for the period beginning March 26, 2022 and ending on April 10, 2022 show that even excluding compensable travel-time, she worked 89.97 hours during that two-week pay-period.

62.     As a second example, Plaintiff's pay-stub for the period beginning July 26, 2022 and ending on August 10, 2022 show that even excluding compensable travel-time, Plaintiff worked 89.95 hours during that two-week pay-period.

63.     Although Plaintiff and other home care aides routinely worked over forty (40) hours a week, they were not properly compensated. Defendants did not pay Plaintiff and other home care aides "time-and-a-half" their regular rate of pay when the hours they recorded and worked totaled more than forty (40) per week. Home care aides received the same "straight time" hourly rate for the hours they were scheduled to work in a client's home, regardless if they were scheduled to work over forty (40) hours a week. Defendants paid Plaintiff and other home care aides nothing for overtime hours deriving from compensable work time spent traveling between Defendants' clients' homes.

64.     There is no bona fide dispute that Plaintiff and other home care aides are owed wages at the required time-and-a-half rate for all hours worked over forty (40) in a workweek.

65.     There is no bona fide dispute that Plaintiff and other home care aides are owed wages for the time they spent traveling between Defendants' clients' homes.

66.     Defendants knew that Plaintiff and other home care aides frequently worked over forty (40) hours per week.

67.     Defendants knew that Plaintiff and others similarly situated spent a significant amount of compensable time on many workdays traveling from one client's home to the next.

68.     Defendants refused to pay Plaintiff and other home care aides for the wages they rightfully earned.

69.     Defendants, acting without good faith, withheld these compensable wages.

70.     Defendants willfully misclassified Plaintiff and other home care aides as independent contractors for purposes of withholding these wages.

71.     Consequently, on behalf of herself and all those similarly situated, Plaintiff seeks the wages to which she is entitled and other available relief through this Complaint.

## FLSA COLLECTIVE ACTION ALLEGATIONS

72.     Plaintiff repeats and incorporates by reference all allegations set forth above.

73.     Pursuant to the FLSA, 29 U.S.C. §§ 207 and 216(b), Plaintiff brings this matter as a collective action on behalf of herself and other similarly situated current and former employees of Defendants who were subject to Defendants' schemes.

74.     The FLSA requires all domestic service workers such as Plaintiff and others similarly situated who are employed by third-party agencies such as FinePoints to be paid for all hours worked and overtime wages for hours worked over forty (40) within a workweek at a rate of one-and-a-half (1.5) times the worker's regular rate of pay.

75.     Defendants' scheme included violating the FLSA's pay requirements through their practice of refusing to pay employees the FLSA-mandated overtime rate and misclassifying employees as independent contractors.

76.     Plaintiff seeks collective action status on behalf of all those similarly situated who are or were employed by Defendants and who worked more than forty (40) hours in a given workweek, including both scheduled shifts and time spent traveling between Defendants' clients' homes, but did not receive required overtime pay at any time during the period beginning three (3) years prior to the filing of this Complaint through the date of judgment of this action ("the FLSA Class").

77.     Defendants knew that Plaintiff and similarly situated employees often worked over forty (40) hours per week and spent time traveling throughout their day between the homes of multiple clients.

78.     Defendants knew or should have known that Plaintiff and those similarly situated were entitled to overtime pay for all hours worked over forty (40) in a workweek and compensation for the time they spent traveling from one client's home to the next.

79.     Plaintiff demands damages reflecting an overtime rate of not less than one-and-a-half (1.5) times her regular rate of pay for all hours worked over forty (40) in a workweek, including, but not limited to, overtime hours deriving from unpaid compensable time spent traveling between Defendants' clients' homes. Plaintiff makes these same demands on behalf of all members of the putative FLSA class.

80.     Plaintiff consents to be a Party-Plaintiff in this matter. Plaintiff's consent form is attached to this Complaint as Exhibit A.

81.     It is likely that other individuals will join Plaintiff during this litigation and file written consents to "opt-in" to this collective action.

82.     There are numerous similarly situated current and former employees of Defendants who have been harmed by Defendants' common scheme to underpay their employees and violate the FLSA.

83.     These similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

84.     Many of these similarly situated employees would benefit from the issuance of court-supervised notice, granting them the opportunity to join this lawsuit.

85.     Upon information and belief, others will choose to join Plaintiff in this lawsuit to recover unpaid wages and other available relief.

## CLASS ACTION ALLEGATIONS UNDER MWHL AND THE MWPCL

86.     Plaintiff repeats and incorporates by reference all allegations set forth above.

87.     Pursuant to Fed. R. Civ. P 23(a) and 23(b)(3), Plaintiff brings this MWHL and MWPCL class action individually and on behalf of two (2) classes that comprise all individuals employed by Defendants who worked as home care aides, or held a similar position, within three (3) years prior to the filing of this Complaint and (i) were denied the legally required overtime rate for hours worked beyond forty (40) in a given week, including, but not limited to, overtime hours arising from unpaid compensable travel-time, in violation of MWHL and the MWPCL ("the Rule 23 Overtime Class"); and (ii) were denied compensation for compensable travel-time, but who did not work over forty (40) hours in a given week ("the Rule 23 Travel-Time Class") (collectively, "the Rule 23 Classes").

88.     *Numerosity*: The individuals in both Classes are so numerous that joinder of all members is impracticable. Although the precise number of such individuals is currently unknown, upon information and belief, there are dozens of current and former employees who are readily identifiable through Defendants' pay records.

89.     *Commonality*: There are questions of law and fact common to the Classes. Among the common questions of law and fact applicable to Plaintiff and the Classes are:

a)      Whether Defendants violated MWHL and/or the MWPCL by failing to pay Plaintiff and the Rule 23 Overtime Class compensation at the required overtime rate for hours worked in excess of forty (40) in a workweek;

b)      Whether Defendants violated MWHL and/or the MWPCL by failing to pay Plaintiff and the Rule 23 Travel-Time Class compensation for compensable time spent traveling between Defendants' clients' homes;

c)      Whether Defendants maintained uniform policies or practices that resulted in denying their employees compensable wages;

d)      Whether Defendants acted in good faith and with reasonable belief that the wages paid were not less than those required;

e)      Whether Defendants' failure to pay wages owed was the result of a bona fide dispute; and

f)      Whether Defendants are liable for damages claimed herein, including, but not limited to, compensatory, liquidated or treble, interest, costs and attorneys' fees.

90.      *Typicality*: Plaintiff's claims are typical of those of the Rule 23 Classes. Plaintiff and all members of the Rule 23 Classes are or were employed as home care aides for Defendants. Plaintiff, like other members of the proposed Rule 23 Classes, was subject to Defendants' policies and practices with respect to overtime, travel-time and employee classification.

91.      *Adequacy*: Plaintiff will fully and adequately protect the interests of the Rule 23 Classes. She seeks the same recovery as the Classes, predicated upon the same violations of law and the same damage theories. Plaintiff has also retained counsel who are qualified and experienced in the prosecution of state-wide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Classes.

92.      *Predominance*: The common issues of law and fact predominate over any individual issues. Each class member's claim is controlled by Defendants' failure to pay all wages due and owing under MWHL and the MWPCL. Similarly, damages can be illustrated on a class-

wide basis in that Defendants' records will provide the amount and frequency each class member was paid.

93.     This action is maintainable as a class action. The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications by individual members of the Classes. This would establish incompatible standards of conduct for Defendants. If these individuals were to pursue their claims separately, the numerous adjudications that would be required to protect the individual interests of the class members would constitute a drain and burden on judicial resources. Accordingly, pursuant to Fed. R. Civ. P. 23, the Court should certify the proposed Rule 23 Classes and allow Plaintiff to send notice to all members.

## CAUSES OF ACTION AND VIOLATIONS OF LAW

### Count I - Violation of the FLSA: Failure to Pay Overtime Wages to Plaintiff and Members of the FLSA Class

94.     Plaintiff hereby fully incorporates in this Count all allegations contained within Plaintiff's Complaint.

95.     Plaintiff is entitled to overtime under 29 U.S.C. § 207(a), which provides that employers must compensate their employees for hours worked in excess of forty (40) in a workweek at a rate of not less than one-and-one-half (1.5) times the regular rate at which they are employed.

96.     Defendants did not pay Plaintiff the prescribed overtime wage rate for hours worked in excess of forty (40) in a workweek, including, but not limited to, overtime wages resulting in part from compensable travel-time.

97.     Defendants' violations of the FLSA were willful, as that term is defined within 29 U.S.C. § 255(a).

98.     Defendants' violations were not the result of good-faith, reasonable error.

16

99.     Defendants knew their violations were unlawful, or showed reckless disregard for whether their conduct was prohibited.

100.     Pursuant to 29 U.S.C. § 216(b), Defendants are liable to Plaintiff and the FLSA Class for unpaid overtime wages for all hours worked beyond forty (40) per workweek, an additional equal amount in liquidated damages, interest, reasonable attorneys' fees, costs and any other relief deemed appropriate by this Court.

### *Count II - Violation of MWHL: Failure to Pay Overtime Wages to Plaintiff and the Rule 23 Overtime Class*

101.     Plaintiff hereby fully incorporates in this Count all allegations contained within Plaintiff's Complaint.

102.     Plaintiff is entitled to overtime wages under Md. Code Ann., Lab. & Empl. § 3-415, which provides that each employer shall pay an overtime wage of at least one-and-one-half (1.5) times the regular hourly rate for each hour over forty (40) that an employee works during a given workweek.

103.     Defendants unlawfully failed to pay the overtime wages owed to Plaintiff and members of the Rule 23 Overtime Class, including, but not limited to, overtime wages resulting in full or in part from compensable travel-time.

104.     Defendants did not act in good faith and with reasonable belief that the wages paid to Plaintiff and members of the Rule 23 Overtime Class were not less than the wages required under MWHL.

105.     Pursuant to MWHL §§ 3-427(a) and (d), Defendants are liable to Plaintiff and members of the Rule 23 Overtime Class for unpaid overtime wages, an additional sum in liquidated damages, interest, reasonable attorneys' fees, costs and any other relief deemed appropriate by this Court.

***Count III - Violation of the MWPCL: Failure to Pay Wages Owed When Due and at the
Termination of Plaintiff's and the Rule 23 Classes' Employment***

106.     Plaintiff hereby fully incorporates in this Count all allegations contained within

Plaintiff's Complaint.

107.     Plaintiff is entitled to wages under the MWPCL, Md. Code Ann., Lab. & Empl. §§

3-501, *et seq*., which provides that each employer shall pay an employee all wages due for work

that the employee performed on their regular paydays and before the end of employment, on or

before the day on which the employee would have otherwise been paid the wages.

108.     Plaintiff has not received compensation from Defendants for all wages owed for

work performed before the termination of her employment as required by Md. Code Ann., Lab. &

Empl. § 3-505(a).

109.     Defendants willfully and intentionally did not compensate Plaintiff for the wages

owed to her and continued to violate the MWPCL, even after Plaintiff informed Defendants of the

violations.

110.     In violation of Md. Code Ann., Lab. & Empl. §§ 3-502 and 3-505(a), Defendants

failed to timely pay Plaintiff and members of the Rule 23 Classes all wages due on their regular

paydays, including overtime and travel-time wages.

111.     Defendants' unlawful failure to timely pay Plaintiff and members of the Rule 23

Classes their earned wages was not in good faith, was not reasonable, did not result from a

legitimate dispute over the validity of their claims, nor the amounts owed, and was not the result

of a bona fide dispute.

112.     Pursuant to Md. Code Ann., Lab. & Empl. § 3-507.2, Plaintiff and members of the

Rule 23 Classes seek their unpaid wages, an additional award of double damages, interest,

reasonable attorneys' fees, costs and any other relief deemed appropriate by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and members of the FLSA and Rule 23 Classes, prays for the following relief:

a) In accordance with 29 U.S.C. § 216(b), designation of this action as a collective action on behalf of Plaintiff and those similarly situated;

b) At the earliest possible time, permission for Plaintiff to give notice of this collective action to the FLSA Class (as defined above), which shall inform members of the FLSA Class that this civil action has been filed, the nature of the action and their right to join this lawsuit, among other things;

c) Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(3) on behalf of the proposed Rule 23 Classes;

d) Designation of the named Plaintiff to act as a class representative on behalf of the Rule 23 Classes;

e) Judgment against Defendants, jointly and severally, for their failure to pay Plaintiff and those similarly situated in accordance with the standards set forth by the FLSA and in the amount of Plaintiff's and each FLSA Class member's respective unpaid overtime wages, plus an equal amount in liquidated damages;

f) Judgment against Defendants, jointly and severally, for their failure to pay Plaintiff and members of the Rule 23 Overtime Class in accordance with the standards set forth by MWHL and in the amount of Plaintiff's and each Rule 23 Overtime Class member's respective unpaid overtime wages, plus an equal amount in liquidated damages;

g)      Judgment against Defendants, jointly and severally, for their failure to pay Plaintiff and members of the Rule 23 Overtime Class in accordance with the standards set forth by the MWPCL and in the amount of Plaintiff's and each Rule 23 Overtime Class member's respective unpaid overtime wages, plus double damages;

h)      Judgment against Defendants, jointly and severally, for their failure to pay Plaintiff and members of the Rule 23 Travel-Time Class in accordance with the standards set forth by MWHL and in the amount of Plaintiff's and each Class member's respective unpaid wages, plus liquidated damages;

i)      Judgment against Defendants, jointly and severally, for their failure to pay Plaintiff and members of the Rule 23 Travel-Time Class in accordance with the standards set forth by the MWPCL and in the amount of Plaintiff's and each Class member's respective unpaid wages, plus double damages;

j)      Judgment against Defendants, jointly and severally, and classifying Defendants' conduct as willful, not in good faith, not reasonable and not the result of a bona fide dispute;

k)      An award of reasonable attorneys' fees as provided in 29 U.S.C. § 216(b) and Md. Code. Ann., Lab. & Empl. §§ 3-427(d) and 3-507.2;

l)      An award for all costs incurred by Plaintiff, plus pre-judgment and post-judgment interest;

m)      Reasonable incentive awards for Plaintiff to compensate her for the time and effort she has spent and will spend protecting the interests of plaintiffs not named in the original Complaint and for the risks she took in doing so; and

n)      All further relief deemed just and equitable by this Honorable Court.

## REQUEST FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests that a jury of her peers hear and decide all claims brought on behalf of Plaintiff and all other similarly situated employees.

Dated: November 16, 2023                    Respectfully submitted,

*/s/ Daniel Kohrman*
Daniel Kohrman (12912)
Benjamin Davis (29774)
AARP FOUNDATION
601 E Street, NW
Washington, D.C. 20049
Telephone: (202) 434-2064

David Rodwin (Fed. Bar No. 18615)
PUBLIC JUSTICE CENTER
201 North Charles Street, Suite 1200
Baltimore, MD 21201
Telephone: (410) 625-9409

*Attorneys for Plaintiff and members of the putative Classes*