**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **MARGARET BOBB,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civ. No.  JKB-23-03129** |
| **FINEPOINTS PRIVATE DUTY HEALTHCARE, LLC, *et al.*,** | * | |
| **Defendants.** | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM**

Plaintiff Margaret Bobb has brought this action against her former employer, FinePoints Private Duty Healthcare, LLC ("FinePoints"), and its owner, Cynthia Keller-Bee, alleging violations of federal and state wage and hour laws. (ECF No 1.)  Pending before the Court is Plaintiff's Motion for Conditional Certification and Issuance of Court-Authorized Notice pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).  (ECF No. 20.)  The Motion is fully briefed, and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2023).  For the reasons stated below, the Motion will be granted in part and denied in part.  The Court will grant the request for conditional certification and substantially approve Plaintiff's proposed notice plan, and will deny Plaintiff's request for equitable tolling of the FLSA's statute of limitations.

**I.     Factual Allegations[1]**

FinePoints provides home care services to certain Maryland residents—typically seniors, people with disabilities, and others who need help caring for themselves. (ECF No. 1 ¶¶ 5–6, 21–

---

[1] At the conditional certification stage, for the limited purpose of setting out the facts of this case, the Court accepts all well-pleaded allegations as true and construes them in the light most favorable to the plaintiff. *Baylor v. Homefix Custom Remodeling Corp.*, 443 F. Supp. 3d 598, 602 (D. Md. 2020) (citing *Wikimedia Found. v. NSA*, 857 F.3d 193, 208 (4th Cir. 2017)).

23.) Keller-Bee owns and operates FinePoints and controls the company's day-to-day operations. (*Id.* ¶ 10.)

Plaintiff worked as a home health aide for FinePoints from approximately January 2021 to March 2023. (*Id.* ¶ 4.) The job responsibilities of Plaintiff and her fellow home health aides included: monitoring clients' mental and physical conditions; assisting with meal preparation and basic housekeeping; assisting with hygiene tasks such as bathing and grooming; accompanying clients on errands such as grocery shopping and medical appointments; and engaging clients in conversation and social activities. (*Id.* ¶¶ 24–31.)

Upon being hired, Defendants required Plaintiff and other home health aides to execute an "Employee Policies and Procedures" agreement and a "Field Employee Standards and Procedures" agreement, which specified various ways that FinePoints could oversee and control their activities while working with clients. These policies included requiring health aides to use tracking devices, wear a FinePoints uniform and identification badge, and notify FinePoints if they were running five or more minutes late to a shift. (*Id.* ¶¶ 35–45.) Plaintiff and other aides were also bound to a "Confidentiality and Non-Competition" agreement, which limited their ability to take competing jobs within 25 miles of any FinePoints office during their employment at FinePoints and for a year thereafter. (*Id.* ¶ 43.)

Until approximately October 2022, Defendants promised to pay Plaintiff and other home health aides \$25 per hour, but withheld 20% of the salary, leading to an effective pay rate of \$20 per hour. (*Id.* ¶¶ 48–49.) Starting in October 2022 and continuing to the end of her employment with FinePoints, Defendants reduced Plaintiff's pay to \$17 per hour. (*Id.* ¶ 50.)

Plaintiff and other employees were compensated only for the times they were scheduled to work, and were not paid for time spent traveling between job sites. (*Id.* ¶ 58.) Plaintiff often spent

2

seven to ten hours per week of uncompensated time traveling between clients' homes. (*Id.* ¶ 55.) Plaintiff regularly worked more than 40 hours a week, and often worked up to 55 hours per week. (*Id.* ¶60.) Defendants knew that she and other employees were working these hours, and that they were spending a significant amount of unpaid time traveling between jobs. (*Id.* ¶ 66.) Even though Plaintiff and other employees regularly worked over 40 hours per week, Defendants did not pay them "time-and-a-half" wages but only paid the "straight time" hourly rate, regardless of the number of hours worked. (*Id.* ¶ 63.) Defendants also refused to pay Plaintiff and other aides for travel times, although these were compensable. (*Id.* ¶¶ 67–69.)

Plaintiff filed her Complaint in November 2023, alleging violations of the FLSA, 29 U.S.C. § 201 *et seq.*; the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. § 3-401 *et seq.*; and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. § 3-501 *et seq.* Defendants answered (ECF No. 12), and Plaintiff filed the instant Motion (ECF No. 20) in February 2024.

## II.    Legal Standard

Section 216(b) of the FLSA provides in relevant part that an action for violations of the statute "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The statute further provides that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.*

This collective action mechanism, including the so-called "opt-in" requirement, "seeks to balance employees' interest in pooling resources to bring collective actions and employers' interest in reducing baseless lawsuits." *Degidio v. Crazy Horse Saloon & Rest. Inc.*, 880 F.3d 135, 143

3

(4th Cir. 2018). Although an FLSA collective action bears some resemblance to a class action brought under Federal Rule of Civil Procedure 23, it is important to understand that "[t]he statutory requirements of a collective action are independent of, and unrelated to, the requirements for class action under Rule 23." *Haskett v. Uber Techs., Inc.*, 780 F. App'x 25, 27 (4th Cir. 2019) (quoting *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1112 (9th Cir. 2018)).

The decision whether to certify a collective action under the FLSA lies within the sound discretion of the district court. *Essame v. SSC Laurel Operating Co.*, 847 F. Supp. 2d 821, 824 (D. Md. 2012). Courts in this Circuit use a two-step process to determine whether to allow an FLSA lawsuit to proceed as a collective action through trial. *Baylor v. Homefix Remodeling Corp.*, 443 F. Supp. 3d 598, 605 (D. Md. 2020); *see also Santos v. E&R Servs., Inc.*, Civ. No. DLB-20-2737, 2021 WL 6073039, at *2 (D. Md. Dec. 23, 2021) (collecting cases).

> First, upon a minimal evidentiary showing that a plaintiff can meet the substantive requirements of 29 U.S.C. § 216(b), the plaintiff may proceed with a collective action on a provisional basis. Second, following discovery, the court engages in a more stringent inquiry to determine whether the plaintiff class is "similarly situated" in accordance with the requirements of § 216.

*Baylor*, 443 F. Supp. 3d at 605 (citing *Rawls v. Augustine Home Health Care Inc.*, 244 F.R.D. 298, 300 (D. Md. 2007)).

If the Court grants conditional certification, it will "help[] facilitate notice to potential class members, who can then choose whether to opt in." *Njoroge v. PrimaCare Partners, LLC*, Civ. No. 22-0425-BAH, 2022 WL 4465894, at *3 (D. Md. Sept. 26, 2022). After discovery, a defendant may move for decertification if it reasonably believes a collective action is inappropriate. *Id.*

"The touchstone" in determining whether to allow provisional certification "is whether Plaintiffs have demonstrated that potential class members are similarly situated." *Essame*, 847 F. Supp. 2d at 824 (quotation omitted); *see also Randolph v. PowerComm Const., Inc.*, 7 F. Supp. 3d

4

561, 575 (D. Md. 2014) (noting that "Rule 23's requirements of numerosity, typicality, commonality, and adequacy do not apply; and plaintiffs only need to show that they and potential class members are 'similarly situated' for the Court to certify the collective action"). To establish that potential class members are similarly situated, Plaintiff need not show that the claims are identical, as a showing that the class members "were victims of a common policy, scheme or plan that violated the law" will suffice. *Baylor*, 443 F. Supp. 3d at 605. In other words, the inquiry "focuses on whether all potential plaintiffs were subjected to the same improper *policy*, not whether the facts of each plaintiff's claims are identical." *Njoroge*, 2022 WL 4465894, at *6 (emphasis in original).

At the provisional certification stage, the evidentiary burden on Plaintiff is "relatively modest." *Essame*, 847 F. Supp. 2d at 825. Plaintiff's submissions "must consist of more than vague allegations with meager factual support, but they need not enable the court to reach a conclusive determination whether a class of similarly situated plaintiffs exist." *Baylor*, 443 F. Supp. 3d at 605 (cleaned up). Plaintiff may make the requisite showing by affidavits or other means. *Id.* The Court does not weigh the evidence, determine the credibility of witnesses, or make factual determinations. *Essame*, 847 F. Supp. 2d at 825.

**III.    Analysis**

Plaintiff states in her affidavit that she and the other proposed class members worked as home care aides, and that they all performed similar tasks. (Bobb. Aff. at ¶¶6–12.) Plaintiff further states that she and all other home care aides were made to sign the same employment agreements, were subject to the same personnel policies and oversight, were required to wear a uniform, had their work schedules set for them by their employer, received the same salary and pay method (including a reduction in wages in October 2022 from $25 to $17 per hour), were subject to the

5

same allegedly unlawful 20% withholding of wages, were not paid for time spent traveling between clients' homes, routinely worked over 40 hours per week but were not paid time-and-a-half wages, as generally required by the FLSA, and were all classified (allegedly wrongfully) as independent contractors. (*See generally* Bobb Decl., ECF No. 20-2.)

As Plaintiff correctly observes, courts in this District have permitted conditional certification on similar facts, including in other cases involving home health aides. *See Njoroge*, 2022 WL 4465894, at \*5 (conditionally certifying a class of at-home caregivers who alleged that they were subject to uniform unlawful overtime and wage policies); *Jones v. Fidelity Resources, Inc.*, Civ. No. RDB-17-1447, 2018 WL 656438, at \*3–4 (D. Md. Feb. 1, 2018) (same); *Aytch v. Trulife Health Servs., LLC*, Civ. No. ELH-17-2769, 2018 WL 1784461, at \*2, 4 (D. Md. Apr. 12, 2018) (noting that the defendant conceded that a class of at-home caregivers was similarly situated when they alleged that they were all performed uncompensated travel time and were improperly denied time-and-a-half wages for overtime work); *see also Santos*, 2021 WL 6073039, at \*1, 4 (conditionally certifying a class of construction workers who alleged that they regularly worked more than 40 hours a week without overtime pay).

The Court agrees with the reasoning in those cases and concludes that conditional certification is warranted. While there may be some factual differences between individual plaintiffs, as Defendants argue (*see* ECF No. 22-2 at 2–3), the allegations, as supported by affidavit testimony, show that all proposed plaintiffs had similar responsibilities, were subject to similar oversight, and were subject to the same allegedly unlawful wage policies.[2] This showing meets

---

[2] Defendants argue that Plaintiff signed an offer letter confirming that she set her own schedule and agreeing to the 20% wage deduction. (ECF No. 22-2 at 2.) But "it is well-settled that the promulgation of written policies, per se, is insufficient to immunize an employer from conduct that otherwise contravenes the FLSA." *Essame*, 847 F. Supp. 2d at 828. And, in any event, at the conditional certification stage, "the fact that Plaintiffs' allegations are disputed by Defendants does not mean that Plaintiffs have failed to establish

the minimal evidentiary burden needed to establish that conditional certification is appropriate. *See Morris v. PP&G, Inc.*, Civ. No. MJM-22-3090, 2023 WL 5404247, at \*4 (D. Md. Aug. 22, 2023) ("Numerous courts have observed that disparate factual and employment settings of the individual plaintiffs should be considered at the second stage of analysis rather than at the first stage." (cleaned up)).

## IV.  Scope of the Class

Plaintiff proposes that the class be defined to include "herself and all other similarly situated home care aides who are or were employed at FinePoints and worked more than forty (40) hours per week, including both scheduled shifts and time spent traveling between FinePoints' clients' homes, within three (3) years prior to the filing of this Motion." (ECF No. 20-1 at 16.) Defendants have not objected to the class definition, and the Court finds the definition appropriately narrow and judicially manageable. Accordingly, the Court will conditionally certify a class of the scope that Plaintiff proposes.

## V.  Tolling of Statute of Limitations

Plaintiff requests that the FLSA's statute of limitations be tolled from February 7, 2024, (the date she filed her Motion for Conditional Certification) through the date of the Court's order on conditional certification. (ECF No.20-1 at 17.) This request will be denied.

The FLSA's statute of limitations requires claims to be filed within two years of the date that a plaintiff's cause of action accrued (three years if the violation was willful). 29 U.S.C. § 255(a). In the case of FLSA collective actions, the statute of limitations continues running for potential plaintiffs until the day they file their consent to join the collective action with the Court (except for the lead plaintiff, for whom it stops running on the day the lawsuit is filed). *Id.* § 256.

---

a colorable basis for their claim that a class of similarly situated plaintiffs exists." *Mitchel v. Crosby Corp.*, Civ. No. DKC-10-2349, 2012 WL 4005535, at \*6 (D. Md. Sept. 10, 2012) (cleaned up).

Courts may equitably toll a statute of limitations only when (1) the plaintiff has been pursuing her rights diligently, and (2) "some extraordinary circumstance" prevented her from timely filing her claim. *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016). A court should exercise its discretion to invoke equitable tolling only in those "rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Whiteside v. United States*, 755 F.3d 180, 184 (4th Cir. 2014) (en banc) (quotation omitted).

Here, Plaintiff has not pointed to any extraordinary circumstance that would warrant equitable tolling. Plaintiff does not argue that Defendants have prevented her or any potential plaintiffs from bringing claims earlier. Moreover, the Court has acted promptly on the request for conditional certification, with less than a month passing between the date Plaintiff's Motion became ripe and the date of today's Memorandum and Order. In the FLSA context, as in any other, "ordinary litigation delay is not considered an 'extraordinary circumstance' warranting equitable tolling." *Schilling v. Schmidt Baking Co.*, Civ. No. TDC-16-2498, 2018 WL 3520432, at \*7 (D. Md. July 20, 2018). And while some courts have equitably tolled the FLSA's statute of limitations, typically in those cases there were unusual circumstances that led to the delay in conditional certification. *See, e.g.*, *McCoy v. Transdev Servs., Inc.*, Civ. No. DKC-19-2137, 2020 WL 2319117, at \*5 (D. Md. May 11, 2020) (equitably tolling FLSA statute of limitations because of delays associated with the COVID-19 pandemic); *Ruffin v. Entertainment of the E. Panhandle*, Civ. No. 3:11-19, 2012 WL 28192, at \*2 (N.D. W. Va. Jan. 5, 2012) (equitably tolling because the Court delayed the question of conditional certification by several months in order to address a preliminary issue).

8

The interplay between §§ 255(a) and 266 of the FLSA indicates that Congress contemplated the possibility that potential plaintiffs' claims would become time-barred in the period between when a complaint is initially filed and when those individuals seek to opt into the collective action. Granting equitable tolling in this case—where there are no extraordinary circumstances—would constitute an end-run around these time limitations that Congress chose to impose. Accordingly, the Court will decline to equitably toll the FLSA's statute of limitations.

## VI. Content of Notice

In FLSA collective actions, district courts have the responsibility to supervise contacts between potential plaintiffs and counsel "to ensure that employees receive accurate and timely notice so that they can make informed decisions about whether or not to participate." *Degidio v. Crazy Horse Saloon & Rest. Inc.*, 880 F.3d 135, 143–144 (4th Cir. 2018) (quoting *Hoffman–La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (cleaned up)). Thus, the Court must consider the content of the notice to be provided to prospective plaintiffs in this case.

The Court has reviewed Plaintiff's proposed notice plan and finds it appropriate and consistent with what other courts in this District have approved. *See Wilson v. Marlboro Pizza, LLC*, Civ. No. 22-1465-BAH, 2024 WL 415349, at *4 (D. Md. Feb. 5, 2024). The Court will approve the proposed plan and the contents of the proposed Notice, with one correction for a typographical error—the word "FOT" in the final line of the proposed Notice (ECF No. 20-13 at 4, ECF No. 20-16 at 4) should be amended to read "FOR." Finally, the Court finds Plaintiff's proposal for a 90-day opt-in period for prospective plaintiffs to be appropriate. *See Wilson*, 2024 WL 415349, at *4 (approving a 90-day notice period and noting that this period is "typical" in this District for FLSA collective actions).

## VII.   Conclusion

For the reasons stated above, a separate Order will issue granting in part and denying in part Plaintiff's Motion for Conditional Certification and Issuance of Court-Authorized Notice (ECF No. 20), directing Defendants to provide Plaintiff's counsel with contact information for prospective plaintiffs, and authorizing Plaintiff to serve a notice of this action on prospective plaintiffs within 90 days of the date that Defendants provide Plaintiff's counsel with the contact information.  The Order will also set in a telephone scheduling conference in this matter.

DATED this Z 7day of March, 2024.

BY THE COURT:

James K. Bredar
Chief Judge